UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH RAY LEWIS,

        Plaintiff,

v.                                    Case no.3:05-cv-1323-J-33MCR

MICHAELS STORES, INC.,

        Defendant.

_____

**<u>ORDER</u>**

This matter comes before the Court pursuant to the Motion for Summary Judgment filed by Michaels on May 22, 2007 (Doc. #31); Michaels' Motion to Strike Certain Portions of Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. #50); and Lewis' Motion to Strike Defendant's Exhibits and for Evidentiary Hearing (Doc. #43). Responses were filed to each motion. (Doc. ##42, 37, and 48.) For the reasons stated below, Lewis' Motion to Strike is denied; Michaels' Motion to Strike is denied; and Michaels' Motion for Summary Judgment is granted in part and denied in part.

**I. Facts**

Mr. Lewis is a floral designer with many years of experience in the floral design industry. (Doc. #42-8 at 20-28.) During the time of the alleged violations, Lewis was fifty-three and fifty-four years of age. (Doc. #42-8 at 9.) Michaels employed Lewis on

1

two separate occasions; Lewis' allegations concern occurrences that took place during his second term of employment. (Doc. #1; Doc. #42-11 at 24; Doc. #42-8 at 37, 49-50.) Michaels first hired Lewis as a floral designer in its St. Augustine, Florida, location in April of 2003. (Doc. #42-8 at 45, 81.) However, after about five months, Lewis voluntarily resigned without notice because "erratic schedul[ing]" was affecting his ability to care for his partner. (Doc. #42-8 at 42, 49-50.) After Lewis' first resignation, Michaels pursued Lewis for re-employment. (Doc. #42-8 at 49.) Although Lewis requested more predictable hours during his second term of employment, Michaels' manager, Terry (Debra) Nelson, explained that company policy precluded any guarantees concerning work scheduling. (Doc. #42-8 at 52.) Instead, Nelson told Lewis that she would make a personal effort to accommodate his needs. (Doc. #42-8 at 51-52; Doc. #42-11 at 25.) Lewis accepted the position and was re-hired by Michaels in March of 2004. (Doc. #42-8 at 54-56.) In October of 2004, a younger, female employee was hired to work in the floral department with Lewis. (Doc. #42-11 at 25; Doc. #42-8 at 57.) During both terms of Lewis' employment with Michaels, most of Lewis' managers liked Lewis and found him to be a hard worker and a good employee. (See, e.g., Doc. #42-11 at 13,18,21,24,27; Doc. #42-9 at 9-12.)

On November 14, 2004, Michaels transferred Daniel Zimmerman into its St. Augustine, Florida, store to work as assistant store

2

manager.   Most of the employees deposed in this case agree that Zimmerman had a brusk management style.  (See, e.g., Doc. #42-11 at 14.)   In fact, Lewis states that employees began "dropping like flies" after Zimmerman was transferred; within a short period of time, nearly fifteen of Michaels' employees resigned.  (Doc. #42-8 at 140-41.)  Shortly after Zimmerman's arrival, Lewis took a leave of absence for medical reasons from November 20, 2004 until December 2, 2004.  (Doc. #42-8 at 73; Doc. #42-6 at 19.)   Lewis claims that the health issues he encountered during that period were either caused or exacerbated by stress at work attributable to Zimmerman's actions.  (Doc. #1 at 4.)

Nelson departed on December 19, 2004, shortly after Lewis' return from sick-leave.  Lewis has provided evidence that Zimmerman assumed the role of acting store manager after Nelson's departure.  (Doc. 42-10 at 90-91.)  Less than a month later, on January 10, 2005, Lewis resigned from Michaels again.  Discounting the days Lewis was absent for sick leave, Lewis and Zimmerman were employed at the same time for approximately forty-seven days.  Lewis alleges that Zimmerman subjected him to discrimination and retaliation during that period.  (Doc. #1.)

Zimmerman, then twenty-seven, allegedly "began making derogatory remarks to Mr. Lewis about his age and about the fact Mr. Lewis was doing a woman's job."  (Doc. #42 at 5 (citing Doc. #42-8 at 86).)  Lewis claims Zimmerman said that floral design was

3

"really a woman's job" and "that a woman should, or a girl should be [in the floral department] instead of [Lewis]." (Doc. #42 at 7 (citing Doc. #42-8 at 86); Doc. #42-7 at 10-11.) Zimmerman allegedly told Lewis that he was ". . . kind of old to be doing [floral design for Michaels]," and allegedly called him an "old faggot." (Doc. #42 at 6 (citing Doc. #42-8 at 86); Doc. #42-8 at 105.) Lewis has testified that on approximately three occasions, Zimmerman made statements similar to, "[d]on't you think its time for you to retire?" (Id.) Lewis alleges Zimmerman also repeatedly said, "why don't [you] just quit like all the other ones?" (Doc. #42-8 at 87.) Lewis also alleges that Zimmerman made comments about Lewis' age and gender to Reginald Legaspi, another Michaels' employee, when Lewis was not present. (Doc. #42 at 7-8; Doc. #42-7 at 9-10.)

Lewis claims that Zimmerman actively made his work-life intolerable. (Doc. #42-8 at 117.) Lewis has testified that, on one occasion, Zimmerman scheduled him to work "two hours before even management [would] open the doors." (Doc. #42-8 at 103-06.) However, Lewis does not contest the fact that Zimmerman modified the schedule when the improper arrival time was brought to his attention. (Id.) Lewis also claims that Zimmerman intentionally made his schedule "erratic." (Doc. #42-8 at 105-06.)

Lewis alleges that he lodged numerous complaints with Michaels about Zimmerman. Lewis has testified that he complained to Nelson

4

on a daily basis about Zimmerman's management after Zimmerman's
arrival until Nelson's departure on December 19, 2004.  (Doc. #42-8
at 85, 96-97.)  Although Nelson claims to have a very difficult
time remembering the circumstances that gave rise to Lewis'
allegations, Nelson confirms Lewis made many complaints and adds
that she "received a lot [of complaints] from different associates
of [Zimmerman's] rudeness."  (Doc. #42-11 at 14-15.)

     Lewis contended that he also "called the Michaels' [employee
complaint] hotline on three occasions."[1]  (Doc. #42-8 at 146-49.)
Lewis testified that he first called at some point in late
December, 2004, and then again on January 2, 2005, and also on
January 10, 2005.[2]  (Doc. #42 at 8 (citing Doc. #42-8 at 147-48).)
Lewis also asserts that Zimmerman had knowledge of his initial
hotline complaint, and that Zimmerman said "it wouldn't do any good
to keep calling the Michaels' hotline."  (Doc. #42-8 at 147-48.)
Lewis has "testified that he specifically reported to the hotline
that Mr. Zimmerman was discriminating against him due to his age
and gender."  (Doc. #42 at 8 (citing Doc. #42-8 at 147-48).)  Lewis

-------

[1] Michaels employs a third-party hotline to take employee
complaints; the hotline then forwards employee complaints to
Michaels' human resources staff.  (Doc. #31-11.)

[2] Lewis claims that the transcript of the January 2, 2005
"hotline complaint" is incomplete because it does not include his
allegations regarding Zimmerman's age and gender-related remarks.
(Doc. #42 at 9; Doc. #43.)  As a result, Lewis filed a Motion to
Strike and Motion for Evidentiary Hearing on June 22, 2007.
(Doc. #43.)

has provided evidence that Velma Murphy, Michaels' zone human resource director, called Lewis shortly after his January 2, 2005 complaint and began an investigation into Zimmerman's actions. (Doc. #42-10 at 37-65.)  Lewis testified that he told Murphy that Zimmerman had been making derogatory remarks about his age and gender, testimony that Murphy disputes.  (Doc. #42 at 9 (citing Doc. #42-8 at 204).)

On the night of January 8, 2005, Zimmerman observed Lewis and two female co-workers, Penny Dillingham and Janel Asplund, in the employee break room on the clock during nightly closing procedures.[3]  (Doc. #42-8 at 155-58.)  Lewis alleges that, although protocol generally dictates that employees continue working until the manager tells them to clock out, it was common practice for people to sit in the break room after they finished cleaning their individual sections in order to wait on the other employees to finish.  (Doc. #42-8 at 157-58.)  Of the three employees sitting in the break room, Zimmerman reprimanded only Lewis and Dillingham. (Doc. #42-13 at 105-07.)  Between Lewis and Dillingham, Lewis received a more stern, written warning while Dillingham received a counseling memorandum.  (Doc. #42-13 at 105-06.)  Zimmerman claims that the other female, Asplund, was not written up because he discovered that she was under the age of eighteen, and he had

---

[3]Recovery is the term Michaels uses to describe the after-hours cleaning performed to prepare the store for business the next day.

mistakenly kept her there after hours.  (Doc. #42-13 at 126-27.)

On January 10, 2005, Lewis was formally given the written warning memorandum by Zimmerman in the presence of his new manager. (Doc. #42-8 at 166-69.)  That same day, Lewis phoned Murphy to lodge another complaint against Zimmerman.  (Doc. #42-8 at 165.) Murphy called Zimmerman and interviewed him about the situation. (Doc. #42-13 at 45-48.)  However, before Murphy finished her investigation, on January 12, 2005, citing, among other things, harassment and discrimination, Lewis tendered his formal resignation.  (Doc. #42-10 at 136-37; Doc. #42-8 at 176.)  Despite resigning, Lewis informed Murphy he would like to stay in contact. Lewis called Murphy again on January 14, 2005; however, there is no record of Murphy returning Lewis' call or contacting him again. (Doc. #42-8 at 211.)  Additionally, shortly after Lewis resigned, he attempted to discuss his situation with Michaels' District Manager, Dennis Bailey.  (Doc. #42-8 at 108.)  However, according to Lewis, Bailey was not helpful.  (Doc. #42-8 at 108.)

On January 17, 2005, without consulting an attorney, Lewis filed a complaint with the Equal Employment Opportunity Commission. (Doc. #42-8 at 124-25.)  Lewis now brings a claim before this Court alleging that Michaels unlawfully discriminated and retaliated against him because of his age and sex in violation of Title VII, the Florida Civil Rights Act, and the Age Discrimination in Employment Act.  (Doc. #1 at 4-5; Doc. #42 at 2.)  Michaels argues

7

that Lewis has not met his burden and that summary judgment is now appropriate.  (Doc. #31 at 1.)

## II. Summary Judgment Standard

Summary judgment is appropriate pursuant to Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); see generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In the paradigmatic summary judgment procedure, the moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp., 477 U.S. 317, 323 (1986)). "The movant has the burden of showing the absence of a genuine issue of material fact."  See, e.g., Poole v. Country Club of Columbus, 129 F.3d 551, 553 (11th Cir. 1997)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  However, a factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is genuine for summary judgment purposes if the evidence is such that a jury could

reasonably return a verdict for the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material for the purposes of summary judgment if it might affect the outcome of the suit under applicable law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997)(citation omitted).

Additionally, in deciding a motion for summary judgment, the Court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." <u>Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, 117 F.3d 1278, 1285 (11th Cir. 1997)(citations omitted). If there is disagreement between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant the summary judgment motion." <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of

his conclusional allegations", summary judgment is not only appropriate, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

As discussed below, Lewis' causes of action under the ADEA, FCRA, and Title VII are all analyzed under the same summary-judgment framework. Lewis' allegations can be divided into two categories under these statutes: (A) claims for discrimination and (B) claims for retaliation.[4] The Court addresses both categories of claims in turn.

### A. Discrimination

Lewis may employ one of three means to establish a prima facie case of employment discrimination under ADEA, FCRA, or Title VII: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Verbraecken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989). Lewis presents neither direct nor statistical

---

[4]Lewis is emphatic that he brings no hostile work environment or harassment claim. Although Michaels devoted considerable time raising defenses to multiple Title VII issues, Lewis states in his response to summary judgment that the correct interpretation of his claim only includes discrimination and retaliation claims under Title VII, FRCA, and ADEA. (Doc. #42 at 2; Doc. #31.)

evidence of discrimination by Michaels.   Addressing what
constitutes direct evidence, the Eleventh Circuit, in Castle v.
Sangamo Westin, Inc., explained that:

> [direct evidence] is "evidence, which if believed, proves
> the existence of a fact in issue without inference or
> presumption," . . . .  An example of direct evidence
> would be a scrap of paper saying, "Fire Rollins—she is
> too old."

837 F.2d 1550, 1558 n.13 (11th Cir. 1988)(citations omitted).   In
Castle, the Eleventh Circuit found that no such evidence existed.
Similarly, the Court finds that Lewis has not provided such direct
evidence, as the evidence provided does not permit a finding of
discriminatory intent without inference or presumption.   Moreover,
Lewis has not provided any statistical evidence.   Thus, Lewis' case
is limited to circumstantial evidence.

In analyzing allegations supported by circumstantial evidence
under either the ADEA, FCRA, or Title VII, the Court follows
substantively the same burden-shifting analysis established in
McDonnell Douglas and its progeny.   See Gamboa v. American
Airlines, 170 F. App'x 610, 612 (11th Cir. 2006)(citing Harper v.
Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998);
see also Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir.
1996)(using substantively identical variation of McDonnell Douglas
framework for ADEA claim).

Under the McDonnell Douglas framework, Lewis bears the initial
burden of establishing a prima facie case of discrimination against

11

Michaels.  McDonnell Douglas, 411 U.S. at 802; Soto v. Bank of
America, No. 6:04-cv-782-Orl-28JGG, 2005 U.S. Dist. LEXIS 26050, at
*20 (M.D. Fla. Nov. 1, 2005).  If Lewis successfully establishes a
prima facie case of discrimination, a rebuttable presumption of
discrimination is created and the burden of proof then shifts to
Michaels.  McDonnell Douglas, 411 U.S. at 802-03; Dickinson v.
Springhill Hosps., Inc., No. 05-16885, 2006 U.S. App. LEXIS 16613,
at *6 (11th Cir. June 29, 2006)(citing EEOC v. Joe's Stone Crab,
Inc., 220 F.3d 1263, 1272 (11th Cir. 2000)).  To rebut the
presumption created by Lewis' prima facie case, Michaels must
provide "legitimate, nondiscriminatory reason[s]" for the
employment action taken against Lewis.  Texas Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard v. A.B.E.L.
Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998).  However,
"[t]his is a burden of production, not persuasion." Standard, 161
F.3d at 1331.  "[Michaels] must merely produce evidence that could
allow a rational fact finder to conclude" its actions were not
motivated by discriminatory animus.  Id.  If Michaels produces such
evidence, the burden shifts back again to Lewis.  McDonnell
Douglas, 411 U.S. at 802-03.  Lewis then "has the opportunity to
come forward with evidence, including the previously produced
evidence establishing [his] prima facie case, sufficient to permit
a reasonable factfinder to conclude that the reasons given by the
employer were not the real reasons for the adverse employment

12

decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted).

### a. Lewis' Prima Facie Burden

To establish a prima facie case of discrimination, Lewis must conjunctively establish: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than a similarly situated person outside his protected class. <u>Hammons v. Wallace State Cmty. Coll.</u>, No. 05-14962, 2006 U.S. App. LEXIS 6396 (11th Cir. Mar. 16, 2006)(citing <u>Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel Univ. of S. Fla.</u>, 342 F.3d 1281, 1289 (11th Cir. 2003)).   The Court first addresses the adverse employment prong of Lewis' prima facie case of discrimination.

### 1.) Adverse Employment Action

"An adverse employment action [for the purposes of a discrimination claim] is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000)(internal quotations and citations omitted).   "[The Eleventh Circuit] has

never adopted a bright line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the discrimination must have for it to be actionable; nor would such a rigid test be proper." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001)(citing Gupta, 212 F.3d at 586). "It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Id. (citing Wideman v. Walmart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998); Wu v. Thomas, 996 F.2d 271, 273-74 (11th Cir. 1993)). "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." Id. at 1239.

The Eleventh Circuit has stated generally that "[t]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." Id. at 1239-40. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id. at 1240 (citing Doe v. Dekalb County School Dist., 145 F.3d 1441, 1453 (11th Cir. 1998)). Because adverse employment action is a necessary element of a discrimination case, a plaintiff's failure to "present sufficient evidence for a reasonable jury to find that

14

this element was met is fatal to [his] case." Turlington v. Atlanta Gas and Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). Lewis contends that he was subject to an adverse employment action in the form of either: (a) the written warning memorandum issued to him by Zimmerman on January 10, 2007 or (b) a constructive discharge as a result of the cumulative effect of Zimmerman's statements and actions. (Doc. #1 at 5-6; Doc. #42 at 10.) The Court will address the alleged adverse employment actions below.

### a.) Formal Warning Memorandum

Standing alone, negative job performance memoranda placed in an employee's file "do not often meet the statutory threshold" for adverse employment action. Davis, 245 F.3d at 1240-41 (discussing two negative job performance memoranda, not part of a progressive discipline structure, as unlikely candidates for adverse employment actions when claimant alleged memoranda "were unwarranted, diminished [claimant's] prestige and self esteem, and potentially may [have] interfere[d] with (unspecified and unexplored) future job prospects"). "Courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." Id. at 1241-42. (discussing national treatment of job performance memoranda in discrimination claims). Lewis has not provided evidence to establish a genuine issue of

15

material fact as to whether the warning memorandum triggered any tangible repercussion.  Accordingly, the January 10, 2005, warning memorandum does not constitute a discriminatory adverse employment action.

### b.) Constructive Discharge

Constructive discharge is an adverse employment decision for the purposes of Title VII claims.  Poole v. Country Club of Columbus, 129 F.3d 551, 553 (11th Cir. 1997).  Under the doctrine of constructive discharge, "[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer . . . is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."  Young v. Sw. Sav. and Loan Assoc., 509 F.2d 140, 144 (5th Cir. 1975)(citations omitted); accord Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (citing Poole, 129 F.3d at 553).  In deciding whether a constructive discharge has occurred, the Court will not consider common, nondiscriminatory hardships endured by every employee for their employer's gain.

Accordingly, the Eleventh Circuit sets a minimum threshold for constructive discharge claims.  "[A] plaintiff's subjective feelings about his employer's actions" will not be considered.  DeKalb, 145 F.3d at 1450.  "Rather, we determine whether 'a reasonable person in [the plaintiff's] position would be compelled

to resign.'" Id. (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir. 1989)).   The Eleventh Circuit has defined a reasonable employee as one who does not "assume the worst" or "jump to conclusions too fast." Garner v. Walmart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)(affirming summary judgment in discrimination case where employee quit after one day in self-perceived unacceptable position).   Thus, "a constructive discharge claim does not present a jury issue unless a plaintiff produces substantial evidence that conditions were [objectively] intolerable." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002)(citing Hill v. Winn Dixie Stores, Inc., 934 F.2d 1518, 126-27 (11th Cir. 1991)); see also Akins v. Fulton County, Ga., 420 F.3d 1293, 1302-03 (11th Cir. 2005). "Before finding a constructive discharge, [the Eleventh Circuit] has traditionally required a high degree of deterioration in an employee's working conditions." Hill, 934 F.2d at 1527.   Some courts have even stated that "before there can be a constructive discharge, the employer must first have been given a sufficient time to remedy the allegedly intolerable situation and then failed to do so." Ellison v. Auburn University Montgomery, No. 2:05-cv-902-MHT, 2006 WL 3292714, at *5 (M.D. Ala. Nov. 13, 2006)(discussing standard for constructive discharge in race discrimination claim).

Factual circumstances in the instant case preclude the

possibility of a jury reasonably finding that Michaels constructively discharged Lewis.  Lewis may not rely on subjective impressions to make his case; he must rely solely on objective factors.  DeKalb, 145 F.3d at 1450.  For example, Lewis may not claim intolerable work conditions based on a "[m]ere suspicion of an unsubstantiated plot" that Zimmerman planned "to fire him at some point in the future due to his [age or sex]."  Fitz, 348 F.3d at 978 (discussing insufficiency of suspected plot where plaintiff claimed constructive discharge when manager supposedly intentionally caused him anxiety).  Also, Lewis may not rely on the allegation that Zimmerman posted a schedule initially requiring him to be at work two hours before anyone with a key to the store would arrive.  The schedule was not a working condition at all because Zimmerman modified it once he learned of Lewis' protests.  See Id. at 977 ("[A] withdrawn reprimand, which has yielded no adverse consequences, is not a working condition at all.").

Thus, Lewis allegations are primarily limited to approximately three "woman's work" comments, one "old faggot" comment, one age-related comment, other derogatory comments, being assigned tasks he had volunteered to perform in the past that were commonly shared by all employees, other workplace acrimony, and the written warning memorandum issued by Zimmerman.  Even considered in the light most favorable to Lewis, this evidence is insufficient to present a jury question as to whether the conditions were objectively intolerable.

Reaching this decision, the Court referenced <u>Hill</u>, a case in which the employer's actions were similar to those taken by Zimmerman.  In <u>Hill</u>, the manager had, within a short period, issued a formal written reprimand to an employee, harshly criticized the employee in front of others, and withdrew customary support of the employee's department.  <u>Hill</u>, 934 F.2d at 1527.  The jury returned a judgment in favor of the plaintiff, finding constructive discharge, but the judge entered a judgment notwithstanding the verdict, overturning the jury's decision.  The Eleventh Circuit affirmed.  Faced with similar adverse actions, this Court, like the <u>Hill</u> Court, looking at the objective evidence, simply cannot find that the working conditions were so intolerable, that voluntary resignation was Lewis' only recourse.  Indeed, Lewis did not even allow the internal grievance process to run its course before submitting his resignation.  Thus, while Zimmerman's alleged actions towards Lewis were inappropriate and offensive, and this Court in no way condones his behavior, the facts on record are insufficient to present a jury question as to constructive discharge.  <u>See</u>, <u>e.g.</u>, <u>Durley v. APAC, Inc.</u>, 236 F.3d 651, 658 (11th Cir. 2000)(holding plaintiff failed to proffer sufficient evidence to permit reasonable jury to find constructive discharge in retaliation claim when plaintiff alleged disparaging remarks about medically necessary absences, smaller bonus than coworkers,

and workplace acrimony); Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001)(receiving poor evaluations insufficient for constructive discharge); Richio v. Miami-Dade Cty., 163 F. Supp. 2d. 1352, 1368 (S.D. Fla. 2001)(manager asking "why don't you just leave and find another job" insufficient for constructive discharge); Rio v. Runyon, 972 F. Supp. 1446, 1459-60 (S.D. Fla. 1997)(brusk management style, coupled with "adolescent, rude, or insensitive comments" not sufficient for finding of constructive discharge).

Failure to satisfy any constituent element of the prima facie case is fatal to a discrimination claim. As such, the Court grants summary judgment on Lewis' discrimination claims. See Turlington, 135 F.3d at 1432.

**B. Retaliation Claim**

**1. EEOC Complaint**

As an initial matter, the Court addresses Michaels' assertions that Lewis is barred from bringing a retaliation claim because he did not "check the [retaliation] box" in his EEOC charge or mention it in his complaint.[5] (Doc. #31 at 21-22 (citing Freeman v. Federal Express Corp., No. 804-CV-2481-T24-TBM, 2006 WL 563123, at

---

[5] Michaels' claim that Lewis did not set out a separate retaliation action in his complaint is without merit. Lewis' complaint plainly states, "Mr. Zimmerman also began to retaliate against Mr. Lewis because of Plaintiff's lawful complaints about Zimmerman's illegal discrimination." (Doc. #1 at 5.)

*8 (M.D. Fla. Mar. 8, 2006); <u>Ramon v. AT&T Broadband</u>, 195 F. App'x 860, 863 (11th Cir. 2006)).)

A plaintiff cannot raise a claim in court that he did not raise in his EEOC charge unless that claim is like or related to the charge's allegations. <u>Chanda v. Engelhard/ICC</u>, 234 F.3d 1219, 1225 (11th Cir. 2000). Accordingly, a plaintiff's judicial complaint is "limited by the scope of the EEOC investigation that could reasonably be expected to develop out of the charges asserted of discrimination." <u>Ramon</u>, 195 F. App'x at 865 (citing <u>Gregory v. Ga. Dep't of Human Res.</u>, 355 F.3d 1277, 1279 (11th Cir. 2004)). "However, the scope of an EEOC complaint should not be strictly interpreted." <u>Id.</u> Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII." <u>Gregory</u>, 355 F.3d at 1280 (internal citations and alterations omitted).

After carefully reviewing Lewis' pro se EEOC charge, Lewis' retaliation claim is not administratively barred by "[his] failure to mark the retaliation space on the EEOC template form." <u>Id.</u> (finding that an EEOC investigation concerning retaliation could have reasonably been expected to develop out of discrimination charge when pro se plaintiff marked discrimination box on EEOC complaint but failed to mark retaliation box).

## 2. Legal Standard

Title VII's retaliation provision prohibits employers from

discriminating against their employees because they have opposed employment practices made unlawful by other sections of Title VII. 42 U.S.C. § 2000e-3(a).[6]  The goal of this provision is to "prevent an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's basic guarantees, including freedom from [gender and age] discrimination." <u>Burlington N. & Santa Fe R.R. Co. v. White</u>, 126 S.Ct. 2405, 2407 (2006). Accordingly, "retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed." <u>Sullivan v. Nat'l R.R. Passenger Corp.</u>, 170 F.3d 1056, 1059 (11th Cir. 1999)(citations omitted).

Lewis has supported his allegations of retaliation against Michaels with circumstantial evidence.  The <u>McDonnell Douglas</u> burden shifting analysis for a retaliation claim is analogous to the burden shifting analysis employed for a discrimination claim when circumstantial evidence is used to allege retaliation. <u>Compare</u> <u>Brochu</u>, 304 F.3d at 1155 (quotations omitted), <u>with</u> <u>McDonnell Douglas</u>, 411 U.S. at 802-03; <u>see also</u> <u>James v. Ala. Dep't of Revenue</u>, 206 F. App'x 869, 871 (11th Cir. 2006).  "If a

---

[6] FCRA and ADEA retaliation claims are treated under substantially the same standard as Title VII retaliation claims. <u>Harper</u>, 139 F.3d at 1389-90 (FCRA retaliation claim dismissed under same standard as Title VII claim); <u>Hairston v. Gainsville Sun Pub. Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)(ADEA retaliation claim analyzed under Title VII standard)(citing <u>Carter v. City of Miami</u>, 870 F.2d 578, 581 (11th Cir. 1989)).

plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment action." <u>Brochu</u>, 304 F.3d at 1155. "If the defendant offers legitimate reasons, the presumption of retaliation disappears", and "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." <u>Sullivan</u>, 170 F.3d at 1059 (internal quotations and citations omitted). "The plaintiff must [then] prove by a preponderance of the evidence that the legitimate reasons offered by the employer for taking the adverse action were not its true reasons." <u>DeLong</u>, 211 F. App'x at 858 (citing <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)).

### 3. Analysis

### a. Prima Facie Retaliation

"Retaliation is a separate violation of Title VII. 'To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [his] protest,' so long as [he] had a reasonable good faith belief that the discrimination existed.'" <u>Gupta</u>, 212 F.2d at 586 (quoting <u>Meeks v. Computer Assocs. Int'l.</u>, 15 F.3d 1013, 1021 (11th Cir.1994). In order to establish a prima facie case of retaliation under Title VII, ADEA, or FCRA "a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3)

there was a causal connection between the two events." <u>Brochu</u>, 304 F.3d at 1155 (citations, quotations, and alterations omitted); <u>Carter v. City of Miami</u>, 870 F.2d 578, 581 (11th Cir. 1989)(ADEA retaliation claim analyzed under same framework as Title VII retaliation claim); <u>Harper</u>, 139 F.3d at 1389-91 (FCRA retaliation claim analyzed under same framework as Title VII retaliation claim).  Michaels argues that Lewis has failed to establish any elements of the prima facie case of retaliation.  (Doc. #31 at 22.) The Court addresses each element below.

### i. Statutorily Protected Expression

It is undisputed that Lewis made several complaints to his superiors and the hotline, both formal and informal, before he voluntarily resigned.[7]  Title VII protects "individuals who have filed formal complaints," and those "who informally voice complaints to their superiors or who use their employer's internal grievance procedures." <u>Rollins v. Fla. Dep't of Law Enforcement</u>, 868 F.2d 397, 400 (11th Cir. 1989); <u>see also</u> <u>Hankins v. Air Tran Airways, Inc.</u>, No. 06-15406, 2007 WL 1705579, at *5 (11th Cir. June 14, 2007).  However, the inquiry does not end there.  The Court must also find that Lewis had a reasonable good faith belief that the discrimination or harassment existed. <u>Gupta</u>, 212 F.2d at 586.

---

[7] Viewing the evidence in the light most favorable to Lewis, the Court will give credence to Lewis' testimony that he did, in fact, complain of discrimination and harassment.  (<u>See</u>, <u>e.g.</u>, Doc. #42-8 at 98, 117, 204.)

The Court finds that a genuine issue of fact exists on this point. In so finding, the Court referenced, _inter_ _alia_, Lewis' allegations that Zimmerman (1) called Lewis an old faggot, (2) told him he was doing woman's work, and (3) asked him when he was going to retire. Indeed, like the Eleventh Circuit in _Gupta_, the Court finds that "[a]lthough the conduct [Lewis] complained about was not [sufficient to constitute an adverse employment action], we cannot say that [he] lacked a 'reasonable good faith belief' that [he] was being [discriminated against or harassed]." _Gupta_, 212 F.2d at 586-87.    As such, Lewis engaged in statutorily protected activities.

### ii.   Adverse Employment Action

Michaels also argues that Lewis did not suffer a retaliatory adverse employment action.   As to the discrimination claim, this Court has found that Lewis had not established a discriminatory adverse employment action.   However, the Supreme Court has recently provided that the standards for finding adverse employment action in discrimination and retaliation claims are not the same.   _White_, 126 S.Ct at 2414.    Namely, the Supreme Court held that the threshold for finding a materially adverse employment action is less substantial for retaliation claims.   _Id._; _see_ _also_ _Taylor v. Roche_, 196 F. App'x 799, 802-03 (11th Cir. 2006)(failure to grant shift change, drawing all reasonable inferences in plaintiff's favor, could be adverse action).    In _White_, "the Supreme

Court . . . defined an adverse employment action in context of a retaliation claim as an action by an employer that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Wallace v. Ga. Dep't of Transp., 212 F. App'x. 799, 802 (11th Cir. 2006)(quoting White, 126 S.Ct. at 2409). In Toulan v. DAP Products, Inc., the Court found that "formal reprimands threatening termination and permanently placed in [Plaintiff's] file constitute materially adverse employment actions under the [White] standard." No. CCB-05-2254, 2007 WL 172522, at *8 (D. Md. Jan. 17, 2007)(citing White, 126 S.Ct. at 2414). Similarly, the January 10, 2005, memorandum placed in Lewis's file provided that "[a]ny further violations of Company policy may result in further disciplinary action up to and including termination." (Doc. #31-9)(emphasis added). Considering this and drawing all inferences in Lewis' favor, a jury could find that Zimmerman's post-complaint actions may have dissuaded a reasonable employee in Lewis' situation from further pursuing statutorily guaranteed protection. See, e.g., Campbell v. University of Akron, 211 F. App'x 333, 350 n.14 (6th Cir. 2006)(prima facie retaliation case made under White adverse employment action standard when Defendant conceded disciplinary measures were adverse employment actions).

**iii.) Causal Connection**

In order to establish the requisite causal connection "a

plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." <u>Gupta</u>, 212 F.3d at 590 (alterations and quotations omitted); <u>see also</u> <u>DeLong</u>, 211 F. App'x at 857-58 (" . . . a plaintiff must generally establish that the decision maker was aware of the protected conduct at the time of the adverse employment action.")(citations omitted). In order to establish the requisite causation for a prima facie case of retaliation, circumstantial evidence of a "'close temporal proximity' [between the protected activity and the adverse action] may [also] be sufficient to show that the[y] were not 'wholly unrelated.'" <u>Id.</u>

Lewis claims to have complained to Michaels' help line at some point in late December of 2004, although he cannot remember the date. Lewis has also provided documentation of a hotline complaint made on January 2, 2005. (Doc. #42-8 at 202-06.) Lewis has testified that Zimmerman had knowledge of the December complaint. (Doc. #42-8 at 147-48.) Moreover, evidence exists indicating Zimmerman was aware of at least one complaint before he issued the written warning: an email dated January 5, 2005 notes that Murphy "spoke with Dan [Zimmerman] about Joseph's concerns." (Doc. #42-8 at 208.)

Zimmerman issued a written warning to Lewis within several weeks of the earliest complaint and barely more than a week after

27

the January 2, 2005, complaint.[8]  The temporal proximity between Zimmerman's evidenced knowledge of Lewis' complaints and the warning is sufficient to permit the inference that the reprimand was not wholly unrelated to retaliatory purposes.  See, e.g., Donellon v. Fruehauf Corp., 794 F.2d 598, 602 (11th Cir. 1986)(mere month lapse between EEOC complaint and discharge sufficient to satisfy prima facie causation requirement for summary judgment purposes); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998)(noting that causation may be established when transfers occur five weeks and two months after complaints); but see Hugdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)(three month lapse, standing alone, insufficient to create inference of causation in ADA retaliation case).  For the above reasons, Lewis has established sufficient causation for summary judgment purposes.

**b. Michaels' Legitimate Reasons for Lewis' Written Warning**

Michaels has provided legitimate reasons for Zimmerman's written warning to Lewis.  Specifically, Michaels has proffered evidence that Lewis was on the clock while he was sitting in the break room during recovery, a violation of official store policy. Michaels has also produced reasons for Zimmerman's asserted belief that Lewis' excuse for not returning to work, a need to take

---

[8] Zimmerman worked at Michaels' St. Augustine, Florida, location with Lewis for forty-seven days.  Lewis claims to have complained to his former store manager, Nelson, on a daily basis. However, Debra Nelson has testified that she does not recall telling Zimmerman of Lewis' complaints.

28

medicine, was incredible.  Namely, Michaels contends that Zimmerman checked Lewis' file and discovered no record of medication. Michaels further contends that it was only after this discovery that Zimmerman wrote Lewis up.  Thus, for summary judgment purposes, Michaels has provided sufficient legitimate reasons for Zimmerman's written warning.

### c. Genuine Issue of Material Fact Regarding Pretext

To create a genuine issue of material fact on the question of pretext, Lewis "must 'demonstrate that the proffered reason was not the true reason for the employment decision.'"  <u>Jackson v. Ala. State Tenure Comm.</u>, 405 F.3d 1276, 1289 (11th Cir. 2005)(quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)). He may do that "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  <u>Id.</u>  In considering Michaels' summary judgment motion, "[t]he district court must evaluate whether [Lewis] demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997)(internal quotations and citations omitted).  Additionally, "[o]n summary judgment, [the Eleventh Circuit] ha[s] written that the 'work rule'

29

defense is arguably pretextual when a plaintiff submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the work rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon v. Fleming Supermarkets of Fla., 196 F.3d 1354, 1363 (11th Cir. 1999)(citations omitted).  The Court notes both inconsistencies and potentially dissimilar treatment.

**i. Inconsistencies**

Zimmerman explicitly and implicitly claims that Lewis received a formal warning because (1) Lewis did not return to work, (2) Zimmerman was unable to find record of Lewis' medication on file that evening, and (3) Lewis was over eighteen at the time of the incident. (Doc. #42-13 at 115-28.)  Lewis does not dispute that he did not return to work after Zimmerman observed him and two other employees in the break room and dismissed him; nor does Lewis dispute that the other employees returned to work after the incident. (Doc. #42-8 at 158-61.)  However, Lewis, in deposing Zimmerman, illuminated inconsistencies in Zimmerman's testimony regarding the reasons and circumstances surrounding Zimmerman's decision to issue the written warning to Lewis.

Zimmerman initially claimed that his decision to discipline Lewis more severely than the other employees was made because he determined Lewis was being dishonest after he reviewed Lewis' file and found no medication notice. (Doc. #42-13 at 121-23.)  However,

30

the written warning that Zimmerman wrote describing the situation
does not mention Lewis' dishonesty regarding his medication at all.
(Doc. #31-9.)  Moreover, Zimmerman claims that the reason he wrote
Lewis' warning on the evening of the incident was because he
checked Lewis' file that evening, January 8, 2005, and found Lewis
to be lying (Doc. #42-13 at 121-23); but, in later testimony,
Zimmerman indicates that he may not have actually checked Lewis'
file until his next shift, after the date of creation of the
written warning (Doc. #42-13 at 143-45).  Lastly, Zimmerman claims
that his reason for not issuing some form of discipline to Asplund
was because he looked at Asplund's personnel file and discovered
that she was under eighteen.  (Doc. #42-13 at 106, 126-27.)
However, Asplund has testified that she was over eighteen at the
time of the incident.  (Doc. #42-2 at 29.)

Accordingly, Lewis has illuminated inconsistencies in
Zimmerman's reasons for issuing the written warning.  See Damon, 16
F.3d at 1366 (conflicting deposition and affidavit testimony could
lead to jury inference of pretext).

**ii. Dissimilar Treatment**

Moreover, Michaels' reasons for Zimmerman's actions, namely
Lewis' violation of store policy, constitute a "work rule" defense
as discussed by the court in Damon.  16 F.3d at 1363-64 (citing
Alphin v. Sears Roebuck & Co., 940 F.2d 1497, 1499 (11th Cir.
1999)).  Michaels contends that because Lewis claimed he needed

31

medication, was excused from work, and was over the age of eighteen, he was not similarly situated. (<u>See</u>, <u>e.g.</u>, Doc. #42-13 at 115-28.) However, the inconsistencies noted above cast doubt on the advanced differences between the employees in the break room that evening. These inconsistencies, coupled with the undisputed fact that the employees received different treatment, create a genuine issue of material fact as to whether or not Michaels' proffered reasons are pretextual. <u>See</u>, <u>e.g.</u> <u>Damon</u>, 16 F.3d at 1365-67 (differential treatment of similarly situated store managers presented jury question as to pretext); <u>Sparks v. Pilot Freight Carriers, Inc.</u>, 830 F.2d 1554, 1564 (11th Cir. 1987)(implausibility of defendant's proffered work rule defense created genuine issue of material fact as to pretext).

**IV. Motions to Strike**

Both Michaels and Lewis have filed Motions to Strike that relate to this summary judgment proceeding. (Doc. #43; Doc. #50.) Material submitted for the purposes of summary judgment may be stricken in a limited number of circumstances. A Court may strike summary judgment materials when: (1) they are insufficient, immaterial, irrelevant, or redundant materials, pursuant to Federal Rule of Civil Procedure 12(f); (2) the submission consists of sham affidavits which directly contradict a witnesses previously sworn testimony; (3) the affidavits are inadmissible because they were not made on a witness' personal knowledge or were made by a witness

32

not competent to testify about the matter; or (4) the Court may strike an affidavit or brief as a sanction for noncompliance with court orders or other misconduct. See English v. CPA Equip. Co., LLC, No. 05-0312-WS-B, 2006 WL 2456030, at *2 n.5 (S.D. Ala. Aug. 22, 2006)(explaining various circumstances in which striking summary judgment submissions may be appropriate)(citing McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); Poston v. Am. President Lines, Ltd., 452 F. Supp. 568, 570 (S.D. Fla. 1978))(other citations omitted). After careful consideration, the Court denies both motions to strike.

## A. Michaels' Motion to Strike

Michaels' Motion to Strike argues that certain parts of Lewis' Opposition should be stricken pursuant to Rule 56 because, "Lewis has failed to support factual statements and/or arguments in the Opposition with summary judgment evidence . . . and cite case law in support of his Opposition." (Doc. #50 at 1.) This proffered justification does not fit into one of the categories noted above. Indeed, Michaels' motion amounts to a request that the Court consider the merits of Lewis' Motion. This request is inappropriate. "The Court is capable of sifting evidence, as required by the summary-judgment standard, without resorting to an exclusionary process, and the [C]ourt will not allow the summary-judgment stage to degenerate into a battle of motions to strike." Reinhart v. Shaner, No. 02-T-1315-N, 2004 WL 419911, at *2 (M.D.

33

Ala. Feb. 9, 2004).[9]

**B. Lewis' Motion to Strike**

Lewis' Motion to Strike argues that two of Michaels' exhibits should be stricken because of their reliance on an "incomplete and untrustworthy" document.  (Doc. #43 at 1.)  The Court need not address the merits of Lewis' arguments, as the Court did not rely on or utilize the evidence that Lewis sought stricken.  Therefore, the motion is denied without prejudice and may be raised at trial.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

1.  The Motion for Summary Judgment (Doc. #31) is **GRANTED** in part and **DENIED** in part.

2.  Summary Judgment is **GRANTED** as to all of Lewis' claims, except the retaliation claims under Title VII, the FCRA and the ADEA.

3. Michaels' Motion to Strike (Doc. #50) and Lewis' Motion to Strike (Doc. #43) are **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 3rd day of August, 2007.

---

[9]The Court recognizes that, because Michaels' Emergency Motion for leave to reply to Lewis' Response (Doc. #46) was denied (Doc. #47), Michaels did not have an opportunity to assert its arguments in opposition.  However, Michaels' Motion to Strike (Doc. #50), which is the functional equivalent of a retitled version of the previously denied Emergency Reply, is a loosely veiled attempt to circumvent this Court's order on the matter. This Court discourages the parties from the use of such tactics.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:

All Counsel of Record